UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KENNEDY WRIGHT,

      Plaintiff,

v.                                    Case No. 3:14-cv-479-J-39JBT

OFFICER MORRELL, et al.,

      Defendants.

_____

**<u>ORDER</u>**

**I. Status**

    Plaintiff Kennedy Wright, an inmate of the Florida penal system, is proceeding in this action on a pro se Amended Civil Rights Complaint (Complaint) (Doc. 26) filed pursuant to 42 U.S.C. § 1983.  The remaining Defendants are Officer Morrell and Sgt. White.  The Court will construe the pro se Complaint liberally. The remaining claim is Defendants Morrell and White failed to intervene when Sergeant Salisbury used excessive force against Plaintiff.[1]  As relief, Plaintiff seeks monetary damages.

    This cause is before the Court on Defendants' Motion for Summary Judgment (Defendants' Motion) (Doc. 57).  Plaintiff was advised of the provisions of Federal Rule of Civil Procedure 56, notified that the granting of a motion to dismiss or a motion for summary judgment would represent a final adjudication of this case

_____

[1] In the Complaint, Plaintiff claims he was denied medical treatment by unnamed medical staff.  Of import, Defendants Morrell and White are not medical staff of the Florida Department of Corrections.  Complaint at 6.

which may foreclose subsequent litigation on the matter, and given an opportunity to respond. See Summary Judgment Notice (Doc. 58) & Order (Doc. 7). Plaintiff filed a Declaration in Support of Plaintiff's Motion for Partial Summary Judgment (Response) (Doc. 61), with attached exhibits, which the Court will construe as Plaintiff's response and declaration. The Court notes that it denied Plaintiff's Motion to Proceed to Summary Judgment (Doc. 34) on December 29, 2015. See Order (Doc. 37), filed December 30, 2015.

## II. Plaintiff's Allegations Against Morrell and White

In his verified Complaint,[1] Plaintiff alleges that on March 9, 2014, while confined at Columbia Correctional Institution Annex, he was assaulted by Sergeant Salisbury. Complaint at 5. Plaintiff states that Defendant Morrell was standing in front of the chow hall; witnessed this use of force; failed to intervene or protect Plaintiff, a handicapped person; and laughed at Plaintiff's predicament. Id. Plaintiff alleges that Defendant White, on March 9, 2014, was standing outside in front of the chow hall, and witnessed Sergeant Salisbury use excessive force on Plaintiff and failed to intervene or protect Plaintiff, a handicapped person.

---

[1] See Stallworth v. Tyson, 578 F. App'x 948, 950 (11th Cir. 2014) (per curiam) (citations omitted) ("The factual assertions that [Plaintiff] made in his amended complaint should have been given the same weight as an affidavit, because [Plaintiff] verified his complaint with an unsworn written declaration, made under penalty of perjury, and his complaint meets Rule 56's requirements for affidavits and sworn declarations.").

<u>Id</u>. at 6.  Plaintiff complains that he suffered a back injury as a result of the force used by Salisbury.  <u>Id</u>.

### III. Summary Judgment Standard

The Eleventh Circuit set forth the summary judgment standard.

> Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law controls which facts are material and which are irrelevant. <u>Raney v. Vinson Guard Service, Inc.</u>, 120 F.3d 1192, 1196 (11th Cir. 1997). Typically, the nonmoving party may not rest upon only the allegations of his pleadings, but must set forth specific facts showing there is a genuine issue for trial. <u>Eberhardt v. Waters</u>, 901 F.2d 1578, 1580 (11th Cir. 1990). A <u>pro se</u> plaintiff's complaint, however, if verified under 28 U.S.C. § 1746, is equivalent to an affidavit, and thus may be viewed as evidence. <u>See Murrell v. Bennett</u>, 615 F.2d 306, 310 n.5 (5th Cir. 1980). Nevertheless, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge." Fed. R. Civ. P. 56(c)(4). "[A]ffidavits based, in part, upon information and belief, rather than personal knowledge, are insufficient to withstand a motion for summary judgment." <u>Ellis v. England</u>, 432 F.3d 1321, 1327 (11th Cir. 2005).
>
> As we've emphasized, "[w]hen the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[T]he mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly

> supported motion for summary judgment; the
> requirement is that there be no genuine issue
> of material fact." Anderson v. Liberty Lobby,
> Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91
> L.Ed.2d 202 (1986). Unsupported, conclusory
> allegations that a plaintiff suffered a
> constitutionally cognizant injury are
> insufficient to withstand a motion for summary
> judgment. See Bennett v. Parker, 898 F.2d
> 1530, 1532-34 (11th Cir. 1990) (discounting
> inmate's claim as a conclusory allegation of
> serious injury that was unsupported by any
> physical evidence, medical records, or the
> corroborating testimony of witnesses).
> Moreover, "[w]hen opposing parties tell two
> different stories, one of which is blatantly
> contradicted by the record, so that no
> reasonable jury could believe it, a court
> should not adopt that version of the facts for
> purposes of ruling on a motion for summary
> judgment." Scott v. Harris, 550 U.S. 372,
> 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

Howard v. Memnon, 572 F. App'x 692, 694-95 (11th Cir. 2014) (per

curiam) (footnote omitted).

Of import, at the summary judgment stage, the Court assumes

all the facts in the light most favorable to the non-moving party,

in this instance, the Plaintiff, and draws all inferences in the

Plaintiff's favor. McKinney v. Sheriff, 520 F. App'x 903, 905

(11th Cir. 2013) (per curiam). "Summary Judgment is appropriate

only when, under the plaintiff's version of the facts, 'there is no

genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law.'" Felio v. Hyatt, 639 F. App'x 604,

606 (11th Cir. 2016) (per curiam) (citation omitted). Therefore,

summary judgment would properly be entered in favor of Defendants

Morrell and White where no genuine issue of material fact exists as to whether Plaintiff's constitutional rights were violated.

## IV. Defendants' Motion

Defendants contend that they are entitled to summary judgment. Defendants' Motion at 9-12.  They also contend that they are entitled to qualified immunity.  <u>Id</u>. at 12-13.  Finally, they submit that Plaintiff has no evidence of physical injury and cannot sustain a claim for compensatory or punitive damages.  <u>Id</u>. at 13-15.

## V.  Plaintiff's Response

Plaintiff, in his Response, urges this Court to find that there remain genuine issues of material fact in dispute.  Response at 1.  Plaintiff attaches the March 11, 2014, Affidavit of Guillermo Cardona, the March 15, 2014, Affidavit of Donald F. Knuckles, administrative documents concerning the incident, and the March 14, 2014 Response from medical.

## VI. Law and Conclusions

### A.  Eighth Amendment

Plaintiff raises an Eighth Amendment claim, and this particular Amendment prohibits the infliction of cruel and unusual punishment.  U.S. Const. amend. VIII.  To prove a prison official violated the Cruel and Unusual Punishments Clause, there has to be a showing that the prison official had a "sufficiently culpable state of mind."  <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994)

(citation omitted).  In prison condition cases, the culpable state of mind is "deliberate indifference" to the health or safety of the inmate.  Id. (citations omitted).  The seminal Supreme Court case on deliberate indifference to a prisoner's safety is Farmer.  In Farmer, the Supreme Court recognized that "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."  Id. at 828-29 (citing Helling v. McKinney, 509 U.S. 25 (1993); Wilson v. Seiter, 501 U.S. 294 (1991); Estelle v. Gamble, 429 U.S. 97 (1976)).

Plaintiff claims Defendants Morrell and White failed to intervene or protect him from Sergeant Salisbury.  Suits against prison officials for failure to protect must satisfy a subjective requirement.  Farmer, 511 U.S. at 837-38.  Specifically, the Court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . .  The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments.". . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id.

6

A correctional officer is directly liable under 42 U.S.C. § 1983 if he fails or refuses to intervene during an unprovoked beating if the officer is "in a position to intervene." Ensley v. Soper, 142 F.3d 1402, 1407 (11th Cir. 1998) (internal citation and quotation omitted).  In a correctional setting, the officer must "take reasonable steps to protect the victim" if he is in a position to intervene. Ledlow v. Givens, 500 F. App'x 910, 914 (11th Cir. Dec. 12, 2012) (per curiam) (citation omitted), cert. denied, 133 S.Ct. 2802 (2013).

A civil rights plaintiff must include facts showing the officer has the ability to stop another officer's use of excessive force. Grimes v. Yoos, 298 F. App'x 916, 921 (11th Cir. 2008) (per curiam) (citing Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 924-25 (11th Cir. 2000)).  Not only must the plaintiff include these facts, the plaintiff must include facts showing the "real opportunity" for the officers to intervene in the alleged unlawful conduct. See Keating v. City of Miami, 598 F.3d 753, 764 (11th Cir. 2010) (citation omitted).  Also, the plaintiff "has the burden to demonstrate that the defendant was in a position to intervene but failed to do so." Ledlow v. Givens, 500 F. App'x at 914.

Therefore, Plaintiff must show that Defendants Morrell and White had a real opportunity to intervene, the ability to intervene, and were in a position to actually intervene, but failed to do so.

## B.  Failure to Intervene

The Court first looks to the excerpts of the Deposition of Plaintiff,[2] provided in support of Defendants' Motion.  Ex. A (Doc. 59-1).[3]  Plaintiff testified he was in the chow hall and Sergeant Salisbury urged him to hurry up, using racist and disparaging remarks.  Id. at 3.  Plaintiff realized the officers were in a hurry to go to count, so he ate a little bit of his food, dumped his tray, and went out of the door.  Id.  As he was going out of the door, Sergeant Salisbury made another disparaging racist remark, called Plaintiff a cripple, and urged him to hurry up.  Id. Plaintiff exited through the west side of the chow hall.  Id. Sergeant Salisbury held the door open.  Id. at 4.  Plaintiff saw Sergeant White and Officer Morrell, and they were standing on the inside of the fence.  Id.  They were about three feet away from the exit door.  Id. at 5.

Plaintiff exited the chow hall and was on the sidewalk heading to his dormitory.  Id.  Plaintiff stopped, turned around, and faced Sergeant White.  Id. at 6.  Plaintiff asked Defendant White why he

_____

[2] In the future, the Attorney General's Office must provide the Court with complete copies of depositions submitted for the Court's review, not excerpts.  In this instance, the Court will undertake its review; however, in the future, the Attorney General's Office should ensure that complete copies of depositions are submitted in support of defense motions, not excerpts of depositions.

[3] The Court hereinafter refers to the Defendants' Exhibits (Docs. 57 & 59) as "Ex."

was allowing his officer to "disrespect" Plaintiff.  Id.  Plaintiff
was facing Defendant White and making this inquiry when Sergeant
Salisbury let the door slam and left the door.  Id. at 6, 10.  "So
he rushed up on me, **struck me with a closed fist** and called me a
nigger and stood over me."  Id. at 6 (emphasis added).  This
occurred while other inmates were attempting to exit the chow hall.
Id.  The officers told the inmates to go back in.  Id.  Sergeant
White told inmate Cordona [sic], who tried to help Plaintiff stand
up, to move on.  Id. at 6-7.  Plaintiff sat on the ground, and
Officer Morrell came and helped him up.  Id. at 7.  Morrell "came
and helped me and told me, man, go on to medical, get yourself
checked out."  Id.  Plaintiff proceeded to medical.  Id.

Plaintiff attested that he was using his cane and his balance
is really messed up.  Id.  He complained that Salisbury put him in
"a remission state when he knocked me down on that concrete on my
butt."  Id. at 8.  Plaintiff went to medical and two male nurses
did a visual examination of him and determined that there was
nothing wrong.  Id.  Plaintiff said he landed on his butt and had
back pain.  Id. at 9.  He went back to medical for a follow-up the
next day.  Id. at 9, 11.  He said when he arrived at medical, the
medical staff told him he had been seen and to get out of there.
Id. at 11.

Defendants submit the Declaration of Defendant Patrick White in support of their Motion.  Ex. B.  He states the following under penalty of perjury:

> On March 9, 2014, I was assigned as T-dormitory Housing Supervisor.  At about 5:55 p.m., we were feeding the inmates dinner.  At that time, I was standing outside the chow hall at Gate 2/3, which separates the chow hall from the receiving area.  I heard a noise behind me and turned around to see inmate Kennedy Wright, DC # 232617 on the ground. Sergeant Salisbury was standing next to him with his hands out trying to help Wright up. I did not see how Wright ended up on the ground, as I was facing the opposite direction and only turned when he was on the sidewalk. I then saw Wright decline help from Sergeant Salisbury, but he did accept help from Officer Morrell, who assisted him to his feet.  At this time, two years later, I cannot remember if Wright asked me to go to medical, but I do remember that after Wright got up he walked away unassisted toward[s] center gate.
>
> I have read the Amended Complaint in this case and am aware of the allegations against me.  Wright claims that I witnessed Sergeant Salisbury use excessive force on him for no reason and that I failed to intervene and protect him.  This is not true.  As stated above, I did not see anyone use any force on inmate Wright, and only turned around once Wright fell to the ground.  I do not know how he got there.  I also never heard anyone laugh at Wright or say anything inappropriate.

Id.

Defendants also provide the Declaration of Defendant Christopher Morrell.  Ex. C.  He states the following under penalty of perjury:

On March 9, 2014, I was running the last few inmates out of the Westside chow hall after the evening meal. I opened the door and heard a commotion behind me outside. I turned around and saw Sergeant Salisbury standing over top of inmate Kennedy Wright, as if he was trying to help him off the ground. Inmate Wright was refusing to allow Sergeant Salisbury to help him, so I walked over and helped Wright up. While this was going on, Sergeant White was over by the gate, letting inmates go back to the dorms after chow.

I have read the Amended Complaint in this case and am aware of the allegations against me. Wright claims that I witnessed Sergeant Salisbury use excessive force on him for no reason and that I failed to intervene and protect him. This is not true. As stated above, I did not see anyone use any force on inmate Wright, and when I came outside Wright was on the ground. I do not know how he got there. I also never laughed at Wright or heard anyone say anything inappropriate.

Id.

The Defendants submitted the Declaration of Albert Carl Maier, M.D., J.D. Ex. D. It addresses Plaintiff's claim that he suffered a back injury and was denied medical attention following the incident. Id. at 1. Dr. Maier states that on March 9, 2014, Plaintiff was seen in medical. Id. Not only was he ambulatory with normal vital signs, he had no objective signs of injury and made no complaints. Id. The medical staff identified no injuries. Id. The medical staff advised Plaintiff to report to sick call if he experienced any problems. Id. The next day, March 10, 2014, Plaintiff complained of back pain. Id. Upon reporting to medical, the nursing staff noted no swelling or bruising, and found

11

Plaintiff to have a normal gait although he presented a subjective complaint of pain. Id. When Plaintiff was seen by medical on May 29, 2014 and June 2, 2014, he voiced no complaints about back pain or a back injury. Id. Through 2015, Plaintiff voiced no complaints about back pain or a back injury. Id.

Dr. Maier noted that Plaintiff made no assertions of back trauma prior to March 9, 2014; however, Plaintiff has a history of hepatitis C, HIV, and a motor vehicle accident with partial paralysis. Id. He further noted that both hepatitis and HIV may cause fleeting migratory myofacial pain. Id. at 1-2. Additionally, Dr. Maier pointed out that Plaintiff "has an established foot drop with bilateral ankle instability requiring corrective orthotics, which could contribute to an asymmetric distribution of axial forces across the lumbosacral area, causing lower back pain." Id. at 2. In conclusion, Dr. Maier could find "no demonstrable objective evidence of any injury" from the fall on March 9, 2014, and found only one subjective report of injury or pain on March 10, 2014. Id.

Defendants also rely on Plaintiff's institutional medical records to support their position. Ex. E. The Emergency Room Record for March 9, 2014, shows that Plaintiff was seen and his vital signs were taken. Id. Plaintiff was ambulatory, alert, and responded to questions. Id. The nurse found no sign of distress and noted no injuries. Id. The physician was not notified and no

treatment was provided.  Id.  Plaintiff was advised to access medical through sick call if he had any symptoms.  Id.  Plaintiff was discharged to population.  Id.  The Diagram of Injury shows no injuries noted.  Id.

When Plaintiff reported back pain the next day, a Back Pain Protocol was completed at sick call, dated March 10, 2014.  Id. Plaintiff described the pain as an aching pain that increases with all activities.  Id.  When asked for a position of comfort, he responded lying still.  Id.  The nurse found Plaintiff's gait normal and, upon examination, she found no swelling, discoloration or bruising.  Id.  Finally, Plaintiff made no medical complaints when he was seen on March 24, 2014 for the Pre-Special Housing Health Evaluation.  Id.

Defendants also provided the Court with the Sworn Interview of Inmate Guillermo Cardona, DC# 333640[,] IG Investigation Number 14-2938, dated April 8, 2014.  Ex. F.  Inmate Cardona states that when he came out of the chow hall, he saw Plaintiff on the floor, on his butt with his knees up and his cane beside him.  Id. at 3.  There was a sergeant or officer in front of him, with his hand out trying to help him up.  Id.  Plaintiff refused the corrections officer's assistance.  Id.  Plaintiff said he wanted to see medical, the officer responded that he was okay, and Plaintiff reiterated that he wanted to see medical.  Id.  Believing it to be a pride issue on Plaintiff's part when he rejected assistance in standing up,

Cardona asked if Plaintiff wanted his help. <u>Id</u>. Plaintiff responded, no. <u>Id</u>. After Plaintiff rejected Cardona's assistance, an officer told Cardona to go ahead and leave. <u>Id</u>. at 4.

Upon inquiry, Cardona stated Plaintiff was already on the ground when Cardona came out of the chow hall. <u>Id</u>. Cardona also stated that he did not hear anybody say anything improper to Plaintiff in the chow hall. <u>Id</u>. Cardona said that he did not know how Plaintiff fell on the ground, but he explained that Plaintiff is impaired and walks "like something's wrong with his legs[.]" <u>Id</u>. Cardona explained that he uses a cane, and at that time, he was pushing inmate Benedetto, an inmate in a wheelchair. <u>Id</u>.

Defendants submitted the Sworn Interview of Inmate Anthony Benedetto, DC# 683672[,] IG Investigation Number 14-2938, dated April 5, 2014, to the Court. Ex. G. Inmate Benedetto described the incident as follows:

> I was out, going outside the exit door of the chow hall on the west side, and as the door was opened up, I seen Kennedy walking forward with his cane, and, like if he missteped [sic] and went down to the ground, and, uh, he fell on his hands. And, uh, Officer Salisbury, uh, tried to help him and he accused Officer Salisbury for pushing him down. And then Officer Salisbury says, "Come on now, stop it Kennedy, come on, grasshopper, let me help you up." He said no. Then Officer Morrell came to try and help him up and, uh, Officer Morrell says, "Let me help you up." He goes, "No, I don't want nobody to help me up." And he tried getting up himself. Meanwhile we're by the, uh, exit of the door, they tried closing the door on us after that happened. I seen Officer White there and a few other

14

> officers too, but, uh, he, uh, wanted to get
> up himself, and then he's saying, "You're not
> going to take me to medical?  You're not going
> to take me to medical?"  And he says "You seen
> what he did to me," and, uh, evidently I think
> he tripped himself because us, he was just
> denied his, us, motion from the supreme court
> on certiorari, and uh, he said "If I can't be
> released now," he had seven more years of
> this, "If I can't get released on this habeas
> corpus, I'm going to make them pay."  And
> that's was [sic] his words.

Id. at 3-4.

When asked if he saw Plaintiff trip over his own feet.
Benedetto responded affirmatively and said that Plaintiff's cane
went down as he went down.  Id. at 4.  Benedetto said the officer
was maybe two feet away from Plaintiff, and he tied to grab
Plaintiff, but Plaintiff went down on his hands.  Id.  Benedetto
said Sergeant Salisbury did not say anything inappropriate but did
offer to help Plaintiff up.  Id.  Benedetto stated that Plaintiff
rejected Salisbury's help, referencing Salisbury's dislike of black
people.

To counter Defendants' Motion, Plaintiff relies on his
verified Complaint.  He also provides his Declaration (Doc. 61),
Cardona's March 11, 2014, Affidavit (Doc. 61-1), and Donald F.
Knuckles' March 15, 2014, Affidavit.  Id.  Cardona's Affidavit
describes the March 9, 2014 incident as follows.  Cardona was
leaving the west side of the chow hall, when he saw Plaintiff
falling backwards and landing on his butt.  (Doc. 61-1 at 1).
Cardona was walking towards the east chow hall.  Id.  Sergeant

Salisbury was standing in front of Wright, with his back to
Cardona. <u>Id</u>. Four or five other officers were standing there, but
they were behind Cardona as Cardona walked towards Sergeant
Salisbury and Plaintiff. <u>Id</u>. Everyone was laughing. <u>Id</u>.
Plaintiff was upset and said he had been shoved down and his cane
was kicked out from beneath him. <u>Id</u>. Plaintiff told the officers
that were behind Cardona that he needed to see medical. <u>Id</u>. They
said he did not. <u>Id</u>. Cardona went to help Plaintiff up but was
told to leave. <u>Id</u>. Cardona left. <u>Id</u>.

Knuckles' Affidavit described two administrative grievances he
wrote against Sergeant Salisbury for making disparaging statements
about handicapped inmates. (Doc. 61-1 at 2). Knuckles described
Salisbury as hating invalids, and especially black invalids. <u>Id</u>.

Assuming Plaintiff did not suffer a de minimis injury,
assuming all facts in the light most favorable to Plaintiff, and
drawing all inferences in the Plaintiff's favor, Plaintiff's own
deposition testimony demonstrates that the Defendants had no real
opportunity to intervene, they were unable to intervene, and were
not in a position to actually intervene. Plaintiff states that the
Defendants were three-feet away from the exit door when the
incident occurred. Plaintiff attests that he was speaking to
Defendant White about Salisbury's disrespectful attitude towards
him. At this point, Salisbury abruptly slammed the exit door,
rushed over to Plaintiff, and struck Plaintiff once with a closed

16

fist.  With this strike, Plaintiff claims Salisbury knocked him down.

Plaintiff has failed to present facts showing the real opportunity for officers Morrell and White to intervene.  Also, Plaintiff has failed to show they were in a position to intervene. Of note, Cardona's Affidavit also does not demonstrate that Defendants Morrell and White were in a position to intervene. Instead, Cardona describes the officers he observed as being behind him as he was walking towards Sergeant Salisbury and Plaintiff.

Plaintiff did not place Morrell and White on notice of an impending attack by Salisbury.  Instead, Plaintiff was complaining to Defendant White about Salisbury's disrespectful attitude immediately prior to the attack.  The duration of the attack was not long enough for Morrell and White to be in a position to intervene.  This was not a prolonged beating.  Instead, it was a sudden, very brief assault: one strike with a closed fist.  Thus, the Defendants did not have the ability to prevent the lone strike that hit Plaintiff.  "The known risk of injury must be a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference." Terry v. Bailey, 376 F. App'x 894, 896 (11th Cir. 2010) (quoting Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and quotations omitted).

Here, there was no known risk of injury.  Plaintiff has not presented any facts suggesting that Defendants Morrell and White had some subjective knowledge of an impending attack by Salisbury. At most, Plaintiff has put forth evidence that Salisbury previously made disparaging remarks about blacks and/or the disabled.[4]  This type of verbal abuse does not constitute evidence of an impending attack.  Moreover, subjection to verbal abuse and humiliation (laughing at someone's misfortune) does not amount to a claim of federal constitutional dimension.

Plaintiff has the burden to show that Defendants Morrell and White were in a position to intervene.  Upon review, Plaintiff has not shown that Defendants Morrell and White "stood idly by while a fellow officer mistreated" Plaintiff.  Ensely v. Soper, 142 F.3d at 1407.  Plaintiff has failed to meet his burden and demonstrate that Morrell and White had a real opportunity to intervene, the ability to intervene, and were in a position to actually intervene, but failed to do so.  There is no evidence before the Court showing that Morrell and White had an opportunity to halt any excessive force under these circumstances.

In light of the above, the Court concludes that Defendants Morrell and White are entitled to summary judgment as there is no evidence from which a reasonable jury could find that Defendants

---

[4] Plaintiff has not provided evidence that these Defendants actually heard these disparaging remarks being made by Sergeant Salisbury.

Morrell and White had a real opportunity to intervene and the ability and position to intervene, but failed to do so.

## B. Qualified Immunity

Defendants assert that they are entitled to qualified immunity from monetary damages in their individual capacities with regard to the failure to intervene claim. Defendants' Motion at 12-13. Recently, the Eleventh Circuit, in Smith v. LePage, Case No. 15-11632, 2016 WL 4473223, at *3 (11th Cir. Aug. 25, 2016), set forth the appropriate inquiry when addressing a claim of entitlement to qualified immunity:

> To determine whether qualified immunity applies, we conduct a two-step inquiry: (1) do the facts alleged, construed in the light most favorable to the plaintiffs, establish that a constitutional violation occurred; and (2) was the violated constitutional right clearly established. Perez, 809 F.3d at 1218. Under either step, "courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." Tolan v. Cotton, --- U.S. ----, 134 S.Ct. 1861, 1866, 188 L.Ed.2d 895 (2014). A right may be clearly established by an existing decision of the Supreme Court, this Court, or the state's highest court. Valderrama v. Rousseau, 780 F.3d 1108, 1112 (11th Cir. 2015). For a right to be clearly established, "there need not be a case on all fours, with materially identical facts"; rather, there can be "notable factual distinctions" between the precedent and the case before the court. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1277 (11th Cir. 2004) (quotations omitted). Officials need only have "reasonable warning" that their conduct violated constitutional rights. Id. (quotation omitted).

It is undisputed that Defendants Morrell and White were engaged in discretionary functions during the event at issue. To defeat qualified immunity with respect to these Defendants, Plaintiff must show both that a constitutional violation occurred and that the constitutional right violated was clearly established. Fennell v. Gilstrap, 559 F.3d 1212, 1216 (11th Cir. 2009) (per curiam). Following the United States Supreme Court's decision in Pearson v. Callahan, 555 U.S. 223, 236 (2009), this Court is "free to consider these elements in either sequence and to decide the case on the basis of either element that is not demonstrated." Youmans v. Gagnon, 626 F.3d 557, 562 (11th Cir. 2010) (per curiam). In this case, the Court will consider the element of whether Plaintiff has established that a constitutional violation occurred.

Since the Defendants were acting within the scope of their discretionary authority when the alleged failure to intervene occurred, the burden is on Plaintiff to show that the Defendants are not entitled to qualified immunity. Skop v. City of Atlanta, 485 F.3d 1130, 1136-37 (11th Cir.), reh'g and reh'g en banc denied, 254 F. App'x 803 (11th Cir. 2007). Here, a reasonable jury could not find that the Defendants violated Plaintiff's Eighth Amendment rights by failing to intervene; therefore, Defendants Morrell and White are entitled to qualified immunity. Because Defendants Morrell and White did not commit an Eighth Amendment violation, they are entitled to qualified immunity with respect to the failure

to intervene claim.  See Hadley v. Gutierrez, 526 F.3d 1324, 1331 (11th Cir. 2008) (citing Priester v. City of Riviera Beach, Fla., 208 F.3d at 924) (finding the plaintiff failed to present evidence from which a reasonable jury could find that the defendant could have stopped the use of force); Ensley v. Soper, 142 F.3d at 1408 (concluding that no reasonable juror could find that the defendant was in a position to intervene and finding "no evidence that might lead a reasonable juror to conclude that [the defendant] violated any clearly established right of [the plaintiff] to intervention.").

In sum, Plaintiff did not meet his burden to demonstrate that Defendants Morrell and White had a real opportunity to intervene and were in a position to intervene, but failed to do so.  They did not violate Plaintiff's constitutional rights, as discussed above, and they therefore are entitled to qualified immunity in their individual capacities.  See Anderson v. City of Naples, No. 12-10917, 2012 WL 6570895, at *4 (11th Cir. Dec. 17, 2012) (per curiam) (not selected for publication in the Federal Reporter) (recognizing that qualified immunity protects government officials engaged in discretionary duties from suits in their individual capacities unless there is a violation of a constitutional right and the right was clearly established at the time of the alleged violation).  Thus, Defendants Morrell and White are entitled to

qualified immunity with respect to the Eighth Amendment claim of failure to intervene.

## CONCLUSION

Based on all of the above, Defendants are entitled to summary judgment, and judgment is due to be entered for Defendants and against Plaintiff.  For all of the foregoing reasons, it is now

**ORDERED:**

1.   Defendants' Motion for Summary Judgment (Doc. 57) is **GRANTED,** and the Clerk shall enter judgment for Defendants Morrell and White and against Plaintiff Wright.

2.   The **Clerk** shall **terminate** Plaintiff's motion for summary judgment (Doc. 61) as the Court has construed this document to be Plaintiff's response and declaration.

3.   The **Clerk** shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 21st day of October, 2016.

_____
BRIAN J. DAVIS
United States District Judge

sa 10/18
c:
Kennedy Wright
Counsel of Record

22